## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **GIMME GOLF TOOL LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,**<br><br>Defendants. | Civil Action No.: 25-cv-15743 |

## COMPLAINT

Plaintiff Gimme Golf Tool LLC ("Plaintiff") hereby sues the Individuals, Partnerships, and Unincorporated Associations as delineated on Schedule A hereto ("Defendants"), alleging as follows:

## INTRODUCTION

1.     This action has been filed by Plaintiff to combat the e-commerce stores who trade upon Plaintiff's reputation and goodwill by offering for sale and selling unauthorized and unlicensed products, mainly including [REDACTED], using infringing and derivative versions of Plaintiff's federally registered copyrights [REDACTED] (the "Infringing Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Infringing Products to unknowing consumers. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their infringing operation.

1

2.      Plaintiff is forced to file this action to combat Defendants' infringement of its federally registered copyrights as well as to protect unknowing consumers from purchasing Infringing Products over the Internet.

3.      Plaintiff has been and continues to be irreparably damaged through loss of market share, loss of future sales, inability to realize a return on investment, diminished goodwill and brand confidence, damage to Plaintiff's reputation, damage to Plaintiff's creative content, and loss of exclusivity in its valuable copyrights rights as a result of Defendants' actions and seeks injunctive and monetary relief.

## PARTIES

4.      Plaintiff is a [REDACTED] with a principal place of business of [REDACTED].

5.       Plaintiff created and is known for their [REDACTED].

[REDACTED]

### Plaintiff's [REDACTED]

6.      Plaintiff manufacturers the [REDACTED] in the Unites States, specifically [REDACTED].

7.      Plaintiff's [REDACTED].

8.      The group's adventure first started with [REDACTED].

9.      The group's adventure also [REDACTED].

10.     The group's adventure also [REDACTED].

11.     As a result of these adventures, the need for a [REDACTED] was realized, and Plaintiff's [REDACTED] was conceived.

12.     Plaintiff spent much time and money in design, testing, and general R&D, from which the Plaintiff's [REDACTED] was formed.

2

13.     Plaintiff's [REDACTED] does the [REDACTED].

14.     Plaintiff is the owner of United States copyright Reg. Nos. [REDACTED] (hereinafter "Plaintiff's Copyrights" or "Copyrights-in-Suit"). *See* **Exhibit A**. A true and correct copy of Plaintiff's Copyrights registrations and deposits are attached as **Exhibit A**.

15.     Plaintiff's Copyrights include [REDACTED]:

| Plaintiff's Copyrights | Titles: | Registration Nos. |
|---|---|---|
| [REDACTED] | [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] | |
| [REDACTED] | [REDACTED] | |
| [REDACTED] | [REDACTED] | |
| [REDACTED] | [REDACTED] | |
| [REDACTED] | [REDACTED] | |
| [REDACTED] | [REDACTED] | |
| [REDACTED] | [REDACTED] | |
| [REDACTED] | [REDACTED] | |

16.     Plaintiff spent significant time and resources on advertising or otherwise promoting the Plaintiff's Copyrights. Plaintiff's average monthly investment in Plaintiff's Copyrights and respective product is about $1,250.00.

17.     Through extensive advertising, Plaintiff amassed over [REDACTED].

18.     Plaintiff's target customer group includes any and all people who [REDACTED].

19.     Plaintiff's main sales channels of products, promoted and shown through Plaintiff's Copyrights, include [REDACTED], providing global customers with a convenient purchasing experience. Plaintiff's Copyrights are displayed in Plaintiff's online product listings and embodied in the products themselves through product packaging. Plaintiff's Copyrights are prominently displayed.

20.      Plaintiff invests substantial resources in Plaintiff's Copyrights and corresponding brand development, enhancing brand and product influence through marketing and advertising. Plaintiff also continually optimizes product pages and customer service to further improve customer satisfaction and loyalty.

21.     Plaintiff has expended substantial time, money, and other resources in producing, advertising, and otherwise promoting Plaintiff's Copyrights. Over time, Plaintiff has invested heavily in the Plaintiff's Copyrights and respective product.

22.     The above U.S. registrations for the Copyrights-in-Suit are valid, subsisting, and in full force and effect. *See* **Exhibit A**.

23.     Plaintiff's Copyrights have become widely known from their unique elements, design and features, and as such, Plaintiff's Copyrights, and the respective products, have become recognized by consumers as high quality products sourced from Plaintiff. Over time, Plaintiff's Copyrights

and the respective products, became popular, resulting in Defendants copying the Plaintiff's Copyrights.

24.     The sales of products under Plaintiff's Copyrights are significant, reflecting strong market recognition, stable brand development, and public recognition of Plaintiff's Copyrights.

25.     Plaintiff became aware of Defendants who also started to sell products, under the Copyrights-in-Suit, which are virtually identical to Plaintiff's products embodied in the Copyrights-in-Suit. As such, Plaintiff filed this action to combat these Seller Aliases listed on **Schedule A** who are harming Plaintiff by offering to sell, selling, advertising, and/or shipping unlicensed products under the Copyrights-in-Suit.

26.     The influx of and wide-spread use of infringing and derivative copies of Plaintiff's Copyrights on the exact same products led to a sharp drop in revenue.

27.     After Defendants entered the online marketplaces, utilizing infringing and/or derivative copies of Plaintiff's Copyrights, Plaintiff has lost an estimated $73,734.83 in profit, being about $884,817.96 per year in lost profits.

28.     This infringing behavior by Defendants severely impacts Plaintiff's copyright rights and undermines the fair competition environment in the market. The sales of Plaintiff's products through the Copyrights-in-Suit have dropped significantly and Plaintiff's market share has been illegally eroded.

29.     The infringing behavior of these Seller Aliases has diminished Plaintiff's copyrights rights and resulted in loss of exclusivity and control of creative content. Plaintiff has not been able to realize the return of investment in the Copyrights-in-Suit.

30. Plaintiff has lost control over the rights in the Plaintiff's Copyrights, lost Plaintiff's and Plaintiff's products reputation, associated goodwill of Plaintiff's Copyrights, and ability to exploit the protected works. Plaintiff has also lost profit, market share, and sales volume.

31. Plaintiff has not entered a contract with or licensing agreement with Defendants for the Copyrights-in-Suit. Defendants are not authorized sellers of products bearing or otherwise using Plaintiff's Copyrights.

32. Defendants are partnerships, individuals, and/or unincorporated associations operating as fictitious seller aliases on online platforms who target sales to Illinois residents by setting up and operating interactive "storefronts" under aliases via online retail website(s). *See* **Exhibit C**.

33. Defendants target Illinois consumers by advertising, offering to sell, and standing ready, willing and able to sell and ship (and in many cases – have indeed sold and shipped) Infringing Products to the United States, including Illinois, under infringing and derivative copies of Plaintiff's Copyrights. *See* **Exhibit B**.

34. Based on the seller alias names and research of Defendants, Defendants reside and operates in the People's Republic of China or other foreign jurisdictions with lenient intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. Aa a result, Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). *See* **Exhibit C**.

35. A search of Defendants' fictitious addresses, if available, via Google do not return the same fictitious business names, respectively, nor any other reliable, correlated entity. *See* **Exhibit C**.

36. Defendants' interactive sites are in English and accept U.S. Dollars. *See* **Exhibit B**.

37. Defendants operate one or more e-commerce stores under seller aliases listed in Schedule A. Through fictitious seller aliases and the anonymity allowed by marketplace platforms,

Defendants purposely conceal their true identity and the full scope of their operations. *See* **Exhibit C**.

38.     Defendants have the opportunity to operate under a proper individual, partnership, or entity name, but Defendants willfully choose to operate under fictitious seller aliases.

## DEFENDANTS' INFRINGING CONDUCT

39.     While the seller aliases (or Defendants) alone may appear as some small-time infringers, the actions of Defendants are of enormous detriment and coordinated.

40.     The infringement empire Defendants participate in and take advantage of is a $500+ ***Billion*** Dollar industry. The U.S. Department of Homeland Security recognizes this serious threat posed by Defendants, detailing the expansive nature as seen below (*See* **Exhibit E**):



41.     Third party online platforms do not adequately subject sellers to verification and confirmation of their identities and products, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit D**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).

42.     "At least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party

sellers" is necessary." **Exhibit E**, Combating Trafficking in Counterfeit and Pirated Goods prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans. Because these online platforms generally do not require a seller to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. *Id*. at 39.

43.     Based on the limited information available and Google research, Defendants engaged in fraudulent conduct when registering the seller aliases by providing false, misleading and/or incomplete information to e-commerce platform(s) to prevent discovery of their true identity, location, and/or the scope of their e-commerce operations. *See generally* **Exhibit C**.

44.      Defendants have the ability to quickly and easily change e-commerce store data, including but not limited to titles, descriptions, images, videos, Date First Available, and other product description information.

45.     Defendants sell, offer for sale, distribute, and advertise goods utilizing infringing and derivative versions of Plaintiff's Copyrights.

46.     Defendants use infringing and/or derivative copies of Plaintiff's Copyrights on at least their [REDACTED]. Defendants' infringing and/or derivative uses include at least the following:

| Plaintiff's Copyrights | Examples of Defendants' Infringement |
|:---:|:---:|
| [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] |

| [REDACTED] | [REDACTED] |
|------------|------------|
| [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] |

47.     In the same or similar locations detailed above, all Defendants use virtually identical – if not the exact same - infringing and/or derivative copies of Plaintiff's Copyrights. *See generally* Exhibit B.

48.     As seen above, the e-commerce stores operating under the seller aliases include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer of products embodying Plaintiff's Copyrights.

49.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies as Plaintiff. For example, Defendants facilitate sales by designing the e-commerce store(s) operating under the seller aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers of authorized products embodying Plaintiff's Copyrights. *See* **Exhibit B**.

50.     Defendants use fictitious name(s) to keep selling despite Plaintiff's actions.

51.     Defendants have bank accounts outside this Court's reach and move money there regularly to avoid paying any monetary judgment. In fact, financial records from similar Schedule A cases

show that off-shore sellers frequently transfer money from U.S. accounts to foreign ones on a regular basis, and upon notice of a lawsuit, to avoid paying any judgment ordered by a court of law in the United States.

52.    Joinder of Defendants is proper because Defendants' illicit actions arise out of the same transaction, occurrence, or series of transactions or occurrences.

53.    Defendants all use the same exact infringing and/or derivative uses of Plaintiff's Copyrights, directing consumers to the same exact products - establishing a logical relationship.

54.    Defendants are involved in, review, and/or are in communication with one another via WeChat and QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, that provide litigation specific content to warn anonymous seller alias networks of upcoming lawsuits against their many respective product listings and aliases - further establishing a logical relationship amongst Defendants.

55.    Defendants' Infringing Products appear identical and manufactured by and come from a common source - further establishing a logical relationship amongst Defendants.

56.    Defendants, in a virtually identical manner, attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation, utilizing fictitious seller aliases and providing no further, credible identifying information - further establishing a logical relationship amongst Defendants. *See* Exhibit C.

57.    Defendants, in a virtually identical manner, utilizes the same channels of trade, in the same time period, with the same infringing and derivative uses of Plaintiff's Copyrights (as seen above), on the same exact product - further establishing a logical relationship amongst Defendants.

58.     Defendants take advantage of a set of circumstances - the anonymity and mass reach the internet affords - to sell Infringing Products, all from across international borders - further establishing a logical relationship amongst Defendants.

59.     Defendants understand that their ability to profit through fictitious internet stores is enhanced as the number of aliases increase, even though each alias may not all engage in direct communication or coordination - further establishing a logical relationship amongst Defendants.

60.     Questions of fact common to all Defendants will arise inherently do to their relatedness and/or logical relationship, identical anonymous nature and foreign status – requiring the same methods to investigate, uncover, and collect evidence about infringing activity, based upon Defendants' same infringing and/o derivative use of Plaintiff's Copyrights on the same Infringing Products – requiring the same legal and factual infringement analysis and damage consideration. *See* **Exhibits B-C**.

61.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, advertise, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences.

62.     The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill and reputation associated with Plaintiff's Copyrights and the destruction of the legitimate market sector in which it operates.

63.     Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods and/or creative works, (ii) causing an overall degradation of the value associated with Plaintiff's

Copyrights and respective products therein, and (iii) increasing Plaintiff's overall cost to market and educate consumers about its products embodied in Plaintiff's Copyrights.

64. The e-commerce store operating under the seller aliases advertise, offers to sell, and stand ready, willing, and able to, and in many instances have based on test purchases, sell and ship Infringing Products to the United States, including Illinois. *See* **Exhibit B**.

65. Defendants' use of the Plaintiff's Copyrights in connection with the advertising, distribution, offering for sale, and sale of Infringing Products, including the sale of Infringing Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

66. Defendants' infringing and/or derivative use of Plaintiff's Copyrights have caused significant financial loss to Plaintiff.

67. Defendants will continue to advertise, sell, and offer for sale products under Plaintiff's intellectual property, namely products containing in whole, or in part, Plaintiff's Copyrights, unless preliminarily and permanently enjoined.

## JURISDICTION AND VENUE

68. This is an action for infringement of the Copyrights-in-Suit arising under 17 U.S.C. §501.

69. This Court has original subject matter jurisdiction over the claims in this action arising under the Copyright Act of 1976, Title 17 U.S.C., §§ 101, et seq., under 28 U.S.C. §§ 1331 and 1338(a), (b).

70. Personal jurisdiction is proper because Defendants directly target consumers in the United States, including in Illinois, through at least the fully interactive commercial Internet stores operating under the Seller Aliases, where Defendants advertise, display, offer to sell, and stand ready, willing and able to, and upon information and belief, and based on test purchases from

numerous Defendants, sell and ship Infringing Products to residents within the Northern District of Illinois. *See* **Exhibit B**. As a result, Defendants have purposefully availed themselves of the privilege of conducting business in the forum state or purposefully directed their copyright infringement activities at the state; Plaintiff's injuries stems from the Defendants' forum-related activities of advertising, offering to sell, selling, and/or shipping Infringing Products to the forum-state; and the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

71.     Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive internet stores through which Illinois residents can, and upon information and belief, and based on test purchases from numerous Defendants, have, purchased products utilizing infringing and/or derivative copies Plaintiff's Copyrights. Defendants have targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in United States Dollars, are in English, and have sold and shipped Infringing Products to Illinois residents.

72.     Defendants are systematically directing or targeting their business activities at consumers in the United States, including Illinois, through the Internet platforms under the Seller Aliases, through which consumers in the United States, including Illinois, can and do view Defendants' Infringing Product listing, communicate with Defendants regarding their respective Infringing Products, place orders for Defendants' Infringing Products, and ship Defendants' Infringing Products to United States addresses, including Illinois. *See* **Exhibit B**. Despite being from a foreign nation, Defendants' e-commerce stores are made to confuse consumers that they and/or their products originate in the United States, and the stores are in English and accept USD. *See* **Exhibit B**. The level of interactivity is high, where consumers of Illinois can: communicate to Defendants

about Infringing Products, view the Infringing Products, purchase the Infringing Products, and ship the Infringing Products to their respective Illinois addresses. Defendants, through their fictitious Seller Aliases, utilize online marketplace platforms for the sole purpose of conducting business transactions, as described above. The Internet webpages owned and operated by Defendants, as described above, are purely commercial in nature. The level of interactivity of these marketplace platform listings owned and operated by Defendants are extremely high and establish regular business with the U.S. and Illinois.

73.     Alternatively, personal jurisdiction is proper pursuant to Federal Rule of Civil Procedure 4(k)(2), where "a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Based on the limited information found on Defendants' Infringing Product listings and based on the Seller Aliases being of foreign origin, Defendants are foreign entities, individuals, or unincorporated associations not subject to any state's courts general jurisdiction, and exercising jurisdiction is consistent with the United States Constitution and laws.

74.     Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to the claim occur within this District, Defendants have committed acts of infringement in and have significant contacts within this District – as described above, and Defendants as delineated in Schedule A are directly targeting their business activities of offering to sell, selling, advertising, and shipping the Infringing Products to this District.

75.     Based on information found on Defendants' Infringing Product listings and based on the Seller Aliases themselves, Defendants are foreign entities or individuals, and "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3).

76.     Further, venue is proper in this district under 28 U.S.C. § 1400 because Defendants are subject to the court's personal jurisdiction and therefore reside in this judicial district or may be found here.

**COUNT I**
**INFRINGEMENT OF PLAINTIFF'S COPYRIGHTS**

77.     Plaintiff hereby re-alleges and incorporates herein by reference, as if fully set forth herein, the allegations contained in the preceding paragraphs of this Complaint.

78.     Plaintiff is the true and correct owner of Plaintiff's Copyrights. *See* **Exhibit A**.

79.     Plaintiff has complied in all respects with the Copyright Act of the United States and other laws governing copyright and secured the exclusive rights and privileges in and to Plaintiff's Copyrights.

80.     Plaintiff's Copyrights are original works.

81.     Under 17 U.S.C. § 106, Plaintiff has the exclusive rights and privileges to reproduce, prepare derivative works, distribute copies, and import copies into the United States, of the Plaintiff's Copyrights.

82.     Defendants infringed Plaintiff's exclusive copyrights by creating infringing and/or derivative works, copying, displaying, advertising, and/or distributing works to the public based upon Plaintiff's Copyrights in violation of 17 U.S.C. § 106, as seen in **Exhibit B**.

83.     Defendants' Infringing Products, Infringing Product listing pages, and/or Infringing Product packaging, incorporate and copy Plaintiff's Copyrights. Defendants' copying constitutes improper appropriation of Plaintiff's Copyrights.

84.     Defendants' Infringing Products, Infringing Product listing pages, and/or Infringing Product packaging are unlawful copies and/or derivatives of Plaintiff's Copyrights.

85.     Defendants had access to Plaintiff's Copyrights.

86.     Due to Defendants' infringing behavior as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's Copyrights.

87.     Defendants have been and are now actively infringing the Copyrights-in-Suit in the State of Illinois, in this judicial district, and other jurisdictions in the United States by displaying, advertising, selling, and/or offering to sell products utilizing and/or under derivative and/or infringing copies of the Copyrights-in-Suit.

88.     Defendants' conduct constitutes willful and direct copyright infringement. The virtually identical nature between Plaintiff's Copyrights and infringing products and/or images used in advertising or displaying or packaging the products sold by Defendants further evidences the willful and direct infringement by Defendants.

89.     Due to Defendants' acts of infringement, Plaintiff has actually and proximately suffered actual, general, and special damages in an amount to be established at trial under 17 U.S.C. § 504(b) and (c).

90.     The harm caused to Plaintiff is irreparable.

91.     Defendants had actual or constructive knowledge of Plaintiff and Plaintiff's Copyrights before and/or during Defendants' advertising, offering for sale, and sale of Infringing Products.

92.     Defendants' conduct as alleged herein was willful, reckless, and/or with knowledge.

## COUNT II
## VICARIOUS AND/OR CONTRIBUTORY COPYRIGHT INFRINGEMENT

93.     Plaintiff re-alleges and incorporates herein by reference, as if fully set forth herein, the allegations contained in the preceding paragraphs of this Complaint.

94.     On information and belief, Plaintiff alleges that Defendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and distribution of Plaintiff's Copyrights. Such conduct included, without limitation, creating derivative works, creating products which use Plaintiff's Copyrights, and/or advertising, offering for sale, and/or selling products under such infringing and/or derivative works that Defendants knew, or should have known, were not authorized to be published by Defendants.

95.     On information and belief, Plaintiff alleges that Defendants are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct. Specifically, Defendants profited in connection with the Infringing Products and advertising of infringing and/or derivative copies of Plaintiff's Copyrights, and were able to supervise the distribution, broadcast, and publication of the Infringing Products.

96.     By reason of the Defendants' acts of contributory and vicarious infringement, Plaintiff has suffered general and special damages in an amount to be established at trial.

97.     Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's rights in Plaintiff's Copyrights.

98.     Defendants have committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious.

17

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against each Defendant as follows:

a. Entry of temporary, preliminary and permanent injunctions, pursuant to 17 U.S.C.§ 502(a) and Federal Rule of Civil Procedure 65, enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell Infringing Products and/or Plaintiff's Copyrights.

b. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators that are provided with notice of the injunction, including but not limited to the online marketplaces [REDACTED], identify any e-mail address(es) known to be associated with Defendants' respective Seller IDs and Seller Aliases, and cease facilitating access to any or all e-commerce stores through which Defendants engage in the promotion, advertising, offering for sale, and/or sale of Infringing Products and/or Plaintiff's Copyrights.

c. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplaces [REDACTED], permanently remove any and all listings offering for sale or advertising Infringing Products and/or Plaintiff's Copyrights via the e-commerce stores operating under the Seller IDs and Seller Aliases, including any and all listings linked to the same seller or linked to any other alias seller identification name being used and/or controlled by Defendants to promote, advertise, display, offer for sale and/or sell Infringing Products and/or Plaintiff's Copyrights.

18

d. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplaces [REDACTED], immediately cease fulfillment of and sequester all goods of Defendants or other Seller under a Seller ID offering for sale the Infringing Product in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

e. Entry of an Order requiring Defendants to account to and pay Plaintiff actual damages and/or Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages, as provided in 17 U.S.C. § 504.

f. Entry of an Order finding that this case is exceptional and an award to Plaintiff its attorney fees and costs as provided by for under 17 U.S.C. § 505.

g. Entry of an Order that, upon Plaintiff's request, any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other domain names, alias seller identification names, or e-commerce store names or store URLs used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

h. Entry of an award of pre- and post-judgment interest on the judgment amount.

i. Entry of an order for any further relief as the Court may deem just and proper.

19

**DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.


DATED December 30, 2025                  Respectfully submitted,

<u>/s/ Ge (Linda) Lei</u>
Ge (Linda) Lei
Getech Law LLC
203 N. LaSalle St., Suite 2100,
Chicago, IL 60601
Attorney No. 6313341
Linda.lei@getechlaw.com
312-888-6633


*ATTORNEY FOR PLAINTIFF*