**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **GIMME GOLF TOOL LLC,** | |
| Plaintiff, | Civil Action No.: 25-cv-15743 |
| v. | Honorable Judge Mary M. Rowland |
| **THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,** | Magistrate Judge Beth W. Jantz |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR
ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff Gimme Golf Tool LLC ("Plaintiff"), by and through its counsel, submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, temporary asset restraint, and expedited discovery (the "Motion").

I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff's Motion seeks temporary *ex parte* relief against Defendants named in Plaintiff's Amended Complaint for copyright infringement pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 101 *et seq*. (17 U.S.C. § 501). As alleged in the Plaintiff's Amended Complaint, Defendants are offering for sale and selling unauthorized and unlicensed products that are utilizing infringing and/or derivative copies of Plaintiff's copyrighted works, U.S. Copyright Reg. Nos. VA 2-450-964 and VA 2-450-965 (hereinafter "Plaintiff's Copyrights"), through the

1

fully interactive, commercial internet stores ("Infringing Products"). *See* **Exhibits B.1-B.4** to Plaintiff's Amended Complaint.

Plaintiff demonstrates the requirements of a temporary restraining order. Here, Plaintiff has a strong likelihood of success on the merits, faces significant irreparable harm, the balance of harms weighs in favor of Plaintiff, and the public is served by preventing the sale of Infringing Products on online platforms.

Further, the entering of the temporary restraining order on an *ex parte* basis is necessary.

While Defendants alone may appear as some small-time infringers (or so they try to portray), the actions of Defendants are of enormous detriment and coordinated. Indeed, the infringement and counterfeiting empire Defendants participate in and take advantage of is a $500+ **Billion** Dollar industry. The U.S. Department of Homeland Security recognizes this serious threat posed by Defendants, detailing the expansive nature as seen below (*See* **Exhibit E** to Plaintiff's Amended Complaint):

## COUNTERFEIT GOODS ON E-COMMERCE PLATFORMS

| $509 Billion | $1.5 Billion | 27,599 |
|---|---|---|
| The value of trade in counterfeit and pirated goods (2016)[i] | The value of seized merchandise (2019)[ii] | The number of CBP seizures of infringing goods (2019)[iii] |
| 3.3% | 2.5 Million | 6 Billion |
| Of total world trade was estimated to be in counterfeit and pirated goods (2016)[iv] | Number of suspected bad actors reportedly prevented from selling goods on a major e-commerce platform (2019)[v] | Number of counterfeit listings reportedly removed from a major e-commerce platform (2019)[vi] |

Indeed, the U.S. Department of Homeland Security goes on to describe the network in more detail:

"American consumers shopping on e-commerce platforms and online third-party marketplaces now face a significant risk of purchasing counterfeit or pirated goods.

Inadvertently, e-commerce platforms now serve as key contributors to counterfeit trafficking by acting as intermediaries and providing marketplaces that match-up sellers and unsuspecting buyers… DHS and DOJ face significant challenges in effectively implementing fines and penalties that deter the introduction of intellectual property rights (IPR)-infringing goods into the U.S. supply chain…The success of utilizing fines and penalties to create a deterrent is frustrated by the fact that many of the bad actors are non-U.S. entities…**frequently change their names and addresses to avoid traceability and dodge law enforcement**.…CBP now encounters approximately 450 million international mail and 150 million express consignment parcels annually, and the numbers continue to trend upward. The sheer volume of small package imports strains CBP's ability to take action on every parcel suspected of containing violative goods.…The current fines and penalties framework has not been successful in deterring the introduction of IPR-infringing goods due, in part, to a singular focus on penalties assessed on individual shipments that are seized and forfeited… The existing enforcement structure for counterfeit violations was not designed for the e- commerce environment, and – as experience has shown – has not been effective in deterring, or otherwise preventing, the large-scale importation of counterfeit goods in the e-commerce environment. Due to the high volume of shipments, the lengthy penalty process, a penalty structure based solely on value, and **the reliance on private entities to enforce parts of the enforcement structure, many counterfeiters willingly incur the cost of a seized shipment or paying a penalty** when the U.S. Government interdicts a shipment." (*See* **Exhibit E** to Plaintiff's Amended Complaint).

Plaintiff seeks to combat these fictitious aliases, and *ex parte* proceedings are not only preferred – but ultimately a necessary procedure - to combat infringement and counterfeiting operations like Defendants.

Here, Defendants have an ability to change and modify store data, including deletion and/or delisting of an ASIN or webpage, and the ability to create new listings and/or aliases to continue selling Infringing Products. Further, based on about a decade of Schedule A case law and the particular facts regarding Defendants, Defendants are fictitious seller aliases operating out of the People's Republic of China or other foreign nation with no reliable address matching the alias names. Defendants fit the same characteristics as other anonymous seller aliases operating out of China and other foreign jurisdictions found in other Schedule A cases, and as a result, Plaintiff and this Court have reliable evidence that Defendants have the ability to and will most likely change

3

account data and move funds out of reach of Plaintiff and this Court upon notice of these proceedings. As a result, proceeding on an *ex parte* basis is necessary.

## II.   STATEMENT OF FACTS

Plaintiff is the owner of Plaintiff's Copyrights. *See* **Exhibit A** attached to Plaintiff's Amended Complaint.

Plaintiff is a United States Limited Liability Company with a principal place of business of 3204 Hawthorne Ct., Plant City, FL, 33566. *See* **Declaration of Bruce Adam Gilley** at ¶ 7. Plaintiff sells products under or utilizing Plaintiff's Copyrights. *Id*. at ¶ 4.

Plaintiff has expended substantial time, money, and other resources in producing, advertising, and otherwise promoting Plaintiff's Copyrights and the products therein. *Id.* at ¶ ¶ 9-12, 15, 22. As a result, Plaintiff's Copyrights have become widely known from their unique elements and features, and as such, Plaintiff's products utilizing Plaintiff's Copyrights have become recognized by consumers as high quality products sourced from Plaintiff. *Id.* at ¶ 23. The widespread prominence, outstanding reputation, and significant goodwill associated with Plaintiff's Copyrights has made Plaintiff's Copyrights invaluable assets of Plaintiff. Indeed, sales from products utilizing Plaintiff's Copyrights are extensive. *Id*. at ¶ 18.

The success of the Plaintiff's Copyrights have resulted in the infringing behavior by Defendants looking to capitalize on the successful and protected works. Consequently, Plaintiff has been required to respond to these illegal actions to protect the copyrights, brand, products, and Plaintiff, and discourage future cases of infringement.

## III.   JURISDICTION

This Court has original subject matter jurisdiction over the claims in this action, personal jurisdiction is proper, and venue is proper. *See* **Plaintiff's Amended Complaint** at ¶ ¶ 67-75.

### IV.     **PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER**

Federal Rule of Civil Procedure 65(b) provides that a "court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if . . . specifics facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b).

Here, Plaintiff seeking an *ex parte* restraining order must show: "(1) it will suffer irreparable harm in the period before final resolution of its claims; (2) traditional legal remedies are inadequate; and (3) the claim has some likelihood of success on the merits." *Zou v. Entities and Individuals Identified in Annex A*, 2024 U.S. Dist. LEXIS 40565, 2024 WL 1013976, at *1 (N.D. Ill. Mar. 8, 2024) (quoting *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323-24 (7th Cir. 2015)). "If these requirements are met, the court must then balance the degree of irreparable harm to the Plaintiff against the harm that the defendant will suffer if the injunction is granted." *Deckers*, 2013 U.S. Dist. LEXIS 92948 at *4 (citing *Incredible Techs*., 400 F.3d at 1011)); *see also Boucher v. Sch. Bd. of the Sch. Dist. of Greenfield*, 134 F.3d 821, 824 (7th Cir. 1998). "The court must apply a sliding scale approach in determining whether to issue a temporary restraining order - the more likely the Plaintiff will succeed on the merits, the less the balance of irreparable harms needs to be to favor the Plaintiff's position." *Deckers*, 2013 U.S. Dist. LEXIS 92948 at *4 (citing *TY, Inc. v. The Jones Group, Inc*., 237 F.3d 891, 895 (7th Cir. 2001)). "Lastly, the court must consider the public interest (non-parties) in denying or granting the injunction." *Deckers*, 2013 U.S. Dist. LEXIS 92948 at *4.

To note, courts in this District have long recognized and held that "proceedings against those who deliberately traffic in infringing merchandise are often rendered useless if notice is

given to the infringers before temporary injunctive and impoundment relief can be granted."

*Columbia Pictures Indus. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996).

A. **Plaintiff is likely to prevail on the merits of its Copyright Infringement Claim.**

Plaintiff is likely to prevail on the merits of its copyright infringement claim.

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Design Basics, LLC v. Signature Constr., Inc.*, 994 F.3d 879, 886 (7th Cir. 2021) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)). Moreover, copyright protection extends to works derived from the original work since Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization . . ., or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

Here, Plaintiff owns the registered copyrights – Plaintiff's Copyrights. *See* **Exhibit A** to Plaintiff's Amended Complaint.

Further, Defendants' Infringing Products incorporate and copy Plaintiff's Copyrights and are considered unlawful copies and/or derivatives, and are infringing uses of the distinctive creative content found in Plaintiff's Copyrights. For example, **Exhibits B.1-B.4** to Plaintiff's Amended Complaint provides screenshot evidence for Defendants' Infringing Products, where Defendants offer to sell and sell virtually identical products under virtually identical works and photographs. As seen in the Comparison Chart therein, each Defendant copies each and every aspect of Plaintiff's Copyrights. *See* **Exhibit B.1** to Plaintiff's Amended Complaint. Each Defendant directly copies and/or utilizes unauthorized derivatives of Plaintiff's Copyrights based

6

on the significant, readily apparent misappropriation of creative content found in Plaintiff's Copyrights. Here, Defendants improperly appropriate protectable expression found in Plaintiff's Copyrights.

Defendants do not have authorization to create unlawful derivatives of Plaintiff's Copyrights, copy Plaintiff's Copyrights, or use the Plaintiff's Copyrights in any other manner that infringes on Plaintiff's exclusive rights. As such, the infringement is clear and establishes that Plaintiff is likely to succeed on the merits of this claim.

Based on the foregoing evidence, Plaintiff has established a likelihood of success on the merits of its copyright infringement claim.

B. **Plaintiff will suffer an immediate and irreparable injury in the absence of preliminary relief and *ex parte* proceedings are necessary.**

Here, Plaintiff will suffer significant immediate and irreparable injury if Defendants' actions are allowed to continue. Further, Plaintiff presents specific facts that clearly show that such immediate and irreparable injury, loss or damage will result to Plaintiff before the adverse party can be heard in opposition. Specifically, based on specific facts surrounding Defendants and experience surrounding anonymous seller aliases in other Schedule A cases – who appear nearly identical in nature to Defendants, Defendants are likely to further modify identities, platforms, payment accounts, or other data upon notice of these proceedings.

i. **Plaintiff will suffer an immediate and irreparable injury.**

Plaintiff will suffer an immediate and irreparable injury absent an *ex parte* temporary restraining order.

As detailed in the Declaration of Bruce Adam Gilley, Defendants' unauthorized use of Plaintiff's Copyrights has and continues to irreparable harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's and Plaintiff's Copyrights' reputation, loss of

7

exclusivity, inability to realize a return on investment, loss of market share, and loss of future sales. Without the entry of an *ex parte* restraining order, Defendants will continue to offer goods utilizing infringing copies of Plaintiff's Copyrights. Upon notice, Defendants will most likely simply close the accused internet stores and open new one(s) on the same or different platforms, as well as relocating their ill-gotten gains to different payment accounts or even relocating the funds to China. *See generally* Declaration of Ge (Linda) Lei. Without the entry of an *ex parte* restraining order, Defendants will continue to offer infringing goods of questionable value to its customers, continuing to cause Plaintiff to lose control of its copyrights and creative content. Plaintiff has already expended substantial time and money in advertising Plaintiff's Copyrights, and Plaintiff has lost significant goodwill, reputation, market share, and sales due to Defendants' infringing activity. *See generally* Declaration of Bruce Adam Gilley. Defendants continue to illegally erode the proper marketplace in which Plaintiff's Copyrights and respective products operate through direct competition on goods utilizing substantially similar, if not exact, copies of Plaintiff's Copyrights, in the same channels of trade. *See e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("'Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm'") (quoting *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012))); *Life Spine, Inc.*, 8 F.4th at 546 (citing 11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2948.1 (3d ed. 2002 & April 2021 Supp. ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable.")); *Abbott Lab'ys.*, 544 F.3d at 1362 (noting likelihood of loss of market position is evidence of irreparable harm). Similarly, Defendants' flooding of the marketplace with goods utilizing infringing and/or derivative copies Plaintiff's Copyrights deters any reputable third party license.

8

Based on the foregoing, Plaintiff will suffer irreparable harm absent an *ex parte* Temporary Restraining Order.

**ii. Defendants are likely to further modify identities, platforms, payment accounts, or other data if an *ex parte* Temporary Restraining Order does not issue.**

In general, concrete evidence that the particular Defendants have, are currently, or will engage in such practices is usually unattainable – let alone at the pleading stage because time is required to see any changes to listing pages, and Plaintiff cannot concretely ascertain the aliases' exact future actions. Indeed, the only evidence available to Plaintiff is the Infringing Product listing URLs and the minimal (if any) facts surrounding the aliases. Plaintiff does not have discovery from Defendants nor any third party discovery.

Notwithstanding, Defendants are likely to modify online marketplace identities, platforms, payment accounts, or other data. Plaintiff submits blatant and coercive ASIN, listing, data, and marketplace manipulation is sadly a common practice in the $500+ billion dollar enterprise Defendants are engaged in. Plaintiff cannot speak as to how such aliases accomplish this coercion; however, the presence of such actions is evident. *See generally* Declaration of Ge (Linda) Lei.

Plaintiff's factual allegations in the Amended Complaint are based on a decade of Schedule A case law, years of personal experience, the seller aliases themselves having the same qualities as other seller aliases from other cases of infringement and counterfeiting, and extensive research into the complex, $500+ billion dollar infringing and counterfeiting industry – which is highly recognized as a real and significant threat to the United States by the U.S. Department of Homeland Security. *See generally* **Exhibit E** to Plaintiff's Amended Complaint. The only winners of this enterprise are foreign, anonymous seller aliases, who are infringing and counterfeiting U.S.

property rights, in the U.S., and taking such proceeds from U.S. citizens back to foreign jurisdictions. *Id.*

In this Lawsuit, Defendants have the same characteristics, anonymity, qualities, and appearance as other fictitious seller aliases flooding marketplace platforms. As a result of these commonalities, Defendants are likely to modify any online marketplace identities, platforms, payment accounts, or other data – just as the other virtually identical, fictitious seller aliases have done and continue to do throughout Schedule A case law.

**1. Defendants are fictitious seller aliases of foreign status.**

As seen in Schedule A to Plaintiff's Amended Complaint, Defendants are fictitious aliases of no identifiable entity. Indeed, it appears that no proper, domestic entity name is included on Schedule A. Rather, Defendants are simply fictitious seller aliases. Further, the identifying information listed on the marketplace platform indicates the seller aliases are of Chinese or other foreign origin. *See* **Exhibit C** to Plaintiff's Amended Complaint.

In fact, as described in Plaintiff's Amended Complaint and Declaration of Ge (Linda) Lei, no further identifying, reliable information is provided regarding an address that matches the alias names. *See* Declaration of Ge (Linda) Lei at ¶ 16. Indeed, based on experience in Schedule A cases, the names and addresses (if listed) on a marketplace platform by a foreign alias are generally fictitious. *Id.* at ¶ 15. For example, seller aliases that do appear will generally submit a declaration from an individual or entity that does not correspond or match the information found on third party discovery relating to that alias. *Id.* at ¶ 17. The vast majority of the time, these names and addresses end up differing from the contact individual listed (if any) and address listed (if any) provided by the third party platform. Based on experience, the only reliable information is the email address, which links the marketplace account to the anonymous individual / entity to receive payments and

manage the account. *Id.* at ¶ 18. Further, in general, even researching fictitious names and addresses of seller aliases lead to the fact that they are incomplete and may not even correspond to an actual location or business at all. *Id.* at ¶ 15; *See also* **Exhibit C** to Plaintiff's Amended Complaint.

Particularly, in this instance, Defendants list Chinese or other foreign addresses on their respective marketplace platforms, and a simple Google search does not reveal any reliable, business entity at such addresses matching the alias names. *See* **Exhibit C** to Plaintiff's Amended Complaint, *See* Declaration of Ge (Linda) Lei at ¶ 16.

The fictious and arbitrary seller aliases are akin to a criminal operating under a fake ID. Criminals use fake IDs because they know their actions are wrongful and do not want to be caught by using their real identity. Plaintiff alleges – and provides evidence that Defendants are operating as fictitious seller aliases – and to discredit any and all allegations of such wrongful actions, facts, qualities, and commonalities in favor of these 'fake ID' criminals who are aware of their wrongdoing is against the vast weight of evidence and widely disseminated knowledge about how such seller aliases operate on online marketplaces. If such seller aliases were not aware of their wrongdoing, why would they create a 'fake ID'? Why not use their actual name or entity name? No reasonable citizen would create and use a fake ID if they were lawful citizens and abiding by the laws. To not consider such factual allegations flatly rebuts reality; instead, construing such facts in favor of these intentional criminals. Even more, as described above, when such anonymous, seller aliases appear – if ever – they remain anonymous, utilizing fictitious names of 'legal representatives' or 'general managers' to submit Declarations, without even identifying who or what is behind the alias.

> 2. **Defendants can and will change and/or modify data and other information.**

11

As described above, Plaintiff respectfully submits that the allegations in Plaintiff's Amended Complaint establish Defendants are likely to modify any online marketplace, identities, platforms, payment accounts, or other data, and that proceeding on an *ex parte* basis for a TRO is not just preferred – but required to combat these aliases.

To begin, as alleged in Plaintiff's Amended Complaint, Defendants utilize WeChat and QQ.com chat rooms and websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, that provide litigation specific content to warn anonymous seller alias networks of upcoming lawsuits against their many respective product listings. *See* Plaintiff's Amended Complaint at ¶ 53. This allegation – among others, along with evidence above of Defendants being fictitious seller aliases, establishes Defendants are likely to modify any online marketplace, identities, platforms, payment accounts, or other data.

As seen in **Exhibit A** hereto, sellerdefense.cn is an up to date blog and website that helps, warns, and blogs about new Schedule A cases, the U.S. property rights at issue, directs sellers to WeChat groups for each lawsuit, details law firms, and much, much more. As seen in **Exhibit A**, this forum details a list of 2025 Schedule A cases (and they have lists for the proceeding years too). In fact, as seen in **Exhibit A,** this website even details law firms and lawyers, describing how to avoid Lawsuits. For example, GBC is a law firm in Chicago that handles numerous Schedule A cases. This forum used by Defendants even details how to spot an oncoming Lawsuit, listing GBC's addresses, buyer IDs (for when they test buy some products), how to set up sites to ensure certain users and law firms cannot find the infringing products, and detailing:

- Is there any way to sell counterfeit goods without being detected?

Selling at the gate of the community ;)

Indeed, this website provides seller aliases, including Defendants, with notice of most Schedule A lawsuits, American lawyers and firms, and advice on how to avoid detection and enforcement efforts – and they only need very limited information to do so.

For example, not surprisingly, this particular website has blogged about numerous cases Plaintiff's Counsel has been involved in. *See* Declaration of Ge (Linda) Lei at ¶ 12. In some instances, the forum only needs the plaintiff's name, guessing which of plaintiff's intellectual property was at issue through independent research. In fact, foreign, anonymous aliases have appeared in a case while it was still under seal – evidencing how such seller aliases use forums and blogs like sellerdefense.cn, their connection and communication to other aliases, and why *ex parte* proceedings are necessary.

To continue, as alleged in Plaintiff's Amended Complaint, Defendants are fictitious partnerships, individuals, and/or unincorporated associations (as described above and shown in **Exhibit C** to Plaintiff's Amended Complaint); Defendants understand that their ability to profit through anonymous internet stores is enhanced as other alias numbers increase, even though they may not all engage in direct communication or coordination; Defendants are of fictitious nature and foreign status; Defendants, through the anonymous Seller Aliases, utilizes Amazon, Temu, and likely other marketplace platforms for the sole purpose of conducting business transactions; and Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation, utilizing fictitious seller aliases.

Plaintiff's factual allegations reflect the reality of Defendants' characteristics, where Defendants will modify and delete data and move assets upon notice of a Lawsuit – just like every other fictitious alias does and/or attempts to do when noticed of a Schedule A lawsuit, evidenced

throughout and from a decade of previous Schedule A case law. *See generally* Declaration of Ge (Linda) Lei; *see also* **Exhibits B-C** hereto.

In other words, Plaintiff has alleged sufficient facts of Defendants' intentional use of a fake alias – with no reliable contact information, akin to other anonymous aliases who have demonstrated their ability to modify and delete data and drain finances upon notice of a Lawsuit, such that Defendants can and are likely to modify any online marketplace, identities, platforms, payment accounts, or other data, and that proceeding on an *ex parte* basis for a TRO is necessary. Years of Schedule A case law, personal experience, and research (even by the U.S. government), details the operation of seller aliases on online marketplaces. In this case, Plaintiff alleged and supports that Defendants fit the same qualities, characteristics, and M.O. as other aliases involved in infringement and counterfeiting networks. Previous experience and case law demonstrates that seller aliases – virtually identical in all characteristics to Defendants – will modify data and transfer assets upon notice of a Lawsuit.

For example, in one particular case, anonymous aliases appeared and presented coerced and likely modified information related to their Date First Available on their Amazon listing in an attempt to undermine a patent's validity; yet, plaintiff showed, with concrete evidence, that defendants clearly modified the Date First Available in an attempt to invalidate a patent. *See* Declaration of Ge (Linda) Lei at ¶ 19. Another example of seller aliases – who appear the same as Defendants – modifying data and other information upon notice of a lawsuit is found in another particular case. *See* Declaration of Ge (Linda) Lei at ¶ 20. In that case, the court issued an *ex parte* Temporary Restraining Order and subsequently issued an Order to Show Cause for specific facts detailing how each defendant is likely to modify online marketplace identities, platform(s) or payment account(s). In that instance, although only one month had passed, the plaintiff detailed

14

how significant changes occurred to the identities, platforms, and listings – including modification of dates first available, modification of descriptions, modifications of titles, etc.

Another example of seller aliases modifying data and likely creating and utilizing other aliases to continue selling infringing products is found in another particular case. While a Preliminary Injunction Order was present, instead of removing the ASIN – as Ordered by the Court, the defendant appeared to transfer the accused product ASIN to a new alias. *Id*. at ¶ 21. Indeed, the same URL was active, except it listed a different alias as the seller in an attempt to continue selling. *Id.*

Finally, aside from Plaintiff's Counsels' personal experience, other reputable, notable attorneys and law firms have faced and detail their similar experiences with seller aliases – like Defendants – being able to and likely intending on modifying and/or deleting data upon notice of a lawsuit. As seen in **Exhibit B**, Stanley D. Ference III details his, along with other attorneys, experience with seller alias patterns. In this declaration, Atty. Ference III describes sealed cases appearing on foreign blogs as soon as service is made, the stealing of identities by aliases, how Amazon even needed discovery in its own litigation because even they did not have accurate information about alias identities, common ownership of aliases, how test buy product return addresses do not match addresses listed on alias accounts, and how such alias addresses and names are fictitious in nature. Further, as seen in **Exhibit C,** Justin R. Gaudio details experience with seller alias names, addresses, and emails.

### 3. **Defendants can and will transfer funds and avoid payment.**

Finally, and notably, *ex parte* proceedings are required due to Defendants' modification and/or draining of illicit funds upon notice of the Lawsuit. As alleged in Plaintiff's Amended Complaint, Defendants can easily and quickly transfer or conceal their funds in their use payment

and financial accounts to avoid detection and liability in the event that the Plaintiff's infringing efforts are discovered, or Plaintiff obtains a monetary award and financial records from similar cases show that offshore sellers frequently transfer money from U.S. accounts to foreign ones on a regular basis to avoid paying any judgment ordered by a court of law.

In fact, on sellerdefense.cn, the forum directs seller aliases – like Defendants – to simply drain their accounts:



As described above, seller aliases – like Defendants – are fictitious, with no real, reliable identity linked to the account. Even when and if seller aliases appear in Court, they usually do not provide any identification. Further, as described above, these seller aliases will say and do whatever it takes – including modifying and deleting data, to be released from a lawsuit. They are unidentifiable and located in foreign jurisdictions, facing no consequences should their coercive and likely fraudulent activities be discovered.

In fact, if a TRO and/or asset freeze is not initiated prior to notice, the vast majority of aliases generally default, where little to no damages can be collected from them to satisfy the court's final order. *See* Declaration of Ge (Linda) Lei at ¶ 23. It is presumed the aliases drained

16

their account upon notice, simply creating a new alias. *Id*. In fact, as seen above, sellerdefense.cn recommends the action of draining accounts upon notice of a lawsuit.

If this Court and others were to provide notice of proceedings prior to an asset freeze and/or TRO, the anonymous seller aliases, like Defendants, would simply drain their financial accounts and not respond to the lawsuit, as instructed to do so above. In fact, for example, in one particular case, one particular defendant was removed from a Preliminary Injunction based on its procedural argument. *Id.* at ¶ 24. Within weeks, the attorney of record withdrew and the alias disappeared and failed to further participate in the lawsuit. Presumably, the financial account was drained and that defendant moved onto the next alias.

Indeed, the infringement operation Defendants are involved in has been described as a game of "whack a mole". *See Bose Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A",* 334 F.R.D. 511, 517 (N.D. Ill. 2020).

Again, aside from Plaintiff's Counsels' personal experience, other reputable, notable attorneys and law firms have faced and detail their similar experience with seller aliases – like Defendants – being able to and engaging in financial draining upon notice of a lawsuit. As seen in **Exhibit B**, Stanley D. Ference III details his, along with other attorneys, experience with seller alias patterns relating to the draining of funds.

In sum, Plaintiff has established irreparable harm. Further, Plaintiff establishes specific facts as to why *ex parte* proceedings are necessary. Here, Plaintiff has established Defendants are fictitious, foreign aliases of the same characteristics and qualities as other aliases found in Schedule A case law. Based on Schedule A case law, Plaintiff's Counsels' personal experience, and other reputable attorney experiences with seller aliases, Defendants – who are virtually identical in nature to other seller aliases – can and will modify data and account listings upon

17

notice of this Lawsuit. Finally, Plaintiff has established, through personal and other experience, that Defendants - who are virtually identical in nature to other seller aliases – can and will drain financial accounts upon notice of this Lawsuit, simply defaulting with zero funds, leaving Plaintiff and this Court powerless. Indeed, without entry of an *ex parte* TRO or asset restraint, Defendants will simply drain their financial accounts and not appear in this Lawsuit, surrendering one alias and easily creating a new one. This leaves Plaintiff with no meaningful recourse for willful infringement in online marketplaces.

C.     **Balancing of harms tips in Plaintiff's favor, and the public interest is served by entry of the injunction.**

Defendants, as evidenced by virtually identical infringement and anonymity, are knowing and intentional infringers.

Indeed, "a court ought not reward a business built on an infringing product by allowing that infringement to continue in the face of a proper application for preliminary relief." *Advanced Communication Design, Inc. v. Premier Retail Networks, Inc.*, 46 Fed. Appx. 964, 984-85 (Fed. Cir. 2002) (balance of harms favored preliminary injunctive relief in action for infringement of patent for apparatus that allowed multiple customers at music or video stores to simultaneously sample an audio or visual product at the store, despite claim that injunction would effectively put alleged infringer out of business; patentee had lost business, goodwill, and sales opportunities, and it was possible that alleged infringer had already benefitted at patentee's expense); *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co*., 290 F.3d 578, 596 (3d Cir. 2002) ("[T]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought the injury upon itself") (citations omitted).

18

Plaintiff has demonstrated an extremely high likelihood of success on the merits. There is absolutely no question at all that the Defendants have committed copyright infringement. As such, the balance of equities weighs most heavily in favor of Plaintiff.

Further, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions.

For these reasons, this Court should enter an *ex parte* relief requested.

## V.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Copyright Act authorizes courts to issue injunctive relief "on such terms as [they] may deem reasonable to prevent or restrain infringement of a copyright..." 17 U.S.C. § 502.

### A.    A Temporary Restraining Order immediately enjoining Defendants' unauthorized and unlawful use of Plaintiff's Copyrights is appropriate.

In relief, Plaintiff seeks a temporary restraining order against the Defendants, enjoining them from making, using, advertising, selling, or offering for sale goods under the infringing and/or derivative copies of the Copyrights-in-Suit. As discussed above, Plaintiff is and will continue to suffer irreparable harm with Defendants' continued unlawful offering for sale and sale of Infringing Products.

### B.    Plaintiff is entitled to expedited discovery.

In addition, Plaintiff seeks expedited discovery to discover which bank systems and payment accounts Defendants use in their infringing operations. The purpose is to identify the identity of Defendants and any additional financial accounts used by the Defendants in order to freeze any assets therein to halt Defendants' infringing activities.

"Federal Rule of Civil Procedure 26(d) explains that parties may generally serve discovery only after a Rule 26(f) conference, 'except ... when authorized by ... court order.' To determine

whether to authorize expedited discovery in a particular case, courts generally apply a 'good cause' standard." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 92948, at *28 (N.D. Ill. Mar. 27, 2013), citing Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."). In this case, much like was the case in *Deckers*, "there is good cause to allow for expedited discovery." *Id*. at *28-29. "Because the Defendants in this case are located overseas and have gone to great lengths to conceal their identities and avoid detection, it is likely that this Court's restraining order would be of little value if the Plaintiff is unable to discover the Defendants' bank accounts and serve the financial institutions maintaining those accounts." *Id*.

In this case, because the Defendants are located overseas and have gone to great lengths to conceal their identities and avoid detection, it is likely that this Court's restraining order would be of little value if the Plaintiff is unable to discover the Defendants' bank accounts, identities, and emails, and to serve the financial institutions maintaining those accounts. In light of this, Plaintiff respectfully requests this Court grant its Motion.

### C. Preventing the fraudulent transfer of assets is appropriate.

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered – circumventing this Court and Plaintiff's enforcement effort and allowing Defendants to simply create new seller aliases for selling Infringing Products without any repercussions. Specifically, upon information and belief, the

20

Defendants in this case holds most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

The freezing of assets "is also appropriate in this case because Defendants may otherwise transfer their financial assets to overseas accounts, thereby depriving the Plaintiff of final relief." *See Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ("A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."); *See F.T. Int'l Ltd. v. Mason*, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting ex parte TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question ... were profits of the [defendants] made by unlawfully stealing [the Plaintiff's] services, the freeze is appropriate and may remain in place pending final disposition of this case."). Without an asset seizure in place, Defendants are highly likely to simply disappear into the night, leaving Plaintiff and this Court powerless to redress their unlawful acts, and in such cases, numerous courts in this circuit – and others - have held that an asset seizure is warranted.

Courts have the inherent authority to issue a prejudgment asset restraint when a Plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its copyright infringement claim, so the Plaintiff is entitled, "subject to the principles of equity, to recover ... defendants' profits." Plaintiff's Amended Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of

Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff.

## VI. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

Federal Rule of Civil Procedure 65(c) states that a "court may issue a preliminary or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The "amount of the bond required by Rule 65(c) rests within the discretion of the trial court". *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989) (*citing Stockslager v. Carroll Elec. Cooperative Corp.*, 528 F.2d 949, 951 (8th Cir. 1976). In this case, Plaintiff states that a bond of $10,000 is more than sufficient given Plaintiff's strong likelihood of success and based upon other bond requirements in this District.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court enter the proposed order, enjoining the Defendants from manufacturing, importing, distributing, advertising, offering for sale, or selling of Infringing Products, temporarily restrain the assets of Defendants, and grant expedited discovery.

DATED January 6, 2026

Respectfully submitted,

/s/ Ge (Linda) Lei
Ge (Linda) Lei
Getech Law LLC
203 N. LaSalle St., Suite 2100,
Chicago, IL 60601
Attorney No. 6313341
Linda.lei@getechlaw.com
312-888-6633

*ATTORNEY FOR PLAINTIFF*

22