Docusign Envelope ID: 09796F21-EFF9-4317-BD9F-828202330A74

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **GIMME GOLF TOOL LLC,** | |
| Plaintiff, | |
| v. | Civil Action No.: 25-cv-15743 |
| | Honorable Judge Mary M. Rowland |
| **THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,** | Magistrate Judge Beth W. Jantz |
| Defendants. | |

## DECLARATION OF BRUCE ADAM GILLEY

I, Bruce Adam Gilley, declare, and state as follows:

1. I am over the age of eighteen and have personal knowledge of the facts set forth in this Declaration. I am competent to testify as to all matters stated, and I am not under any legal disability that would in any way preclude me from testifying. The following information regarding Plaintiff, Plaintiff's Copyrights, and sales information is accurate to the best of my knowledge. I make this declaration from my personal knowledge unless otherwise stated.

2. I am an individual residing in Plant City, FL. I am the Owner of Plaintiff Gimme Golf Tool LLC ("Plaintiff").

3. Plaintiff is the owner of the United States Copyright Reg. Nos. VA 2-450-964 and VA 2-450-965 (hereinafter "Plaintiff's Copyrights").

4. Plaintiff sells products under or utilizing the Plaintiff's Copyrights.

1

5. **Exhibit A** to Plaintiff's Amended Complaint contains a true and correct copy of the registrations of Plaintiff's Copyrights.

6. **Exhibit B.1** to Plaintiff's Amended Complaint contains true and correct copies of the applicable deposits for Plaintiff's Copyrights.

7. Plaintiff is a United States Limited Liability Company with a principal place of business of 3204 Hawthorne Ct., Plant City, FL, 33566. Plaintiff created and is known for their unique golf accessory – the "Gimme Golf Tool." Plaintiff manufacturers the Gimme Golf Tool in the Unites States.

8. Plaintiff's Gimme Golf Tool was conceived on a golf course with a bunch of friends. Our adventure first started with a celebratory 'shotgun' – which includes puncturing the side of a can to drink its contents. However, we had to use miscellaneous, incompatible items to puncture the cans, including keys, tees, and even teeth. Our adventure also included cigars, which were set on the golf cart's cup holders or even on the ground when not in use. However, such locations were not secure, leading to the loss of some cigars, burn out of some cigars, and general inability to properly enjoy a cigar throughout the golf round due to no proper mechanism or location to hold the cigars. Our adventure also included landing golf shots on the greens, a softer, smooth surface found on each hole of a golf course. Such greens can absorb golf ball momentum, resulting in divots when impacted. As is customary, we utilized proper divot fixing devices to ensure the green was properly fixed and maintained. As a result of these adventures, the need for a singular device to accommodate these golf activities was realized, and Plaintiff's Gimme Golf Tool was conceived.

Docusign Envelope ID: 09796F21-EFF9-4317-BD9F-828202330A74

9. Plaintiff spent much time and money in design, testing, and general R&D, from which the Plaintiff's Gimme Golf Tool was formed. Plaintiff's Gimme Golf Tool does the task of fixing a ball mark, holding players' cigars – whether in the golf cart securely via magnet or on the ground via the divot prongs, and properly puncturing a can to 'shotgun'.

10. Plaintiff also spent much time and money in advertising – including through the creation of the 2D work and photographs contained in Plaintiff's Copyrights to properly display and advertise Plaintiff's Gimme Golf Tool.

11. Plaintiff spent significant time and resources on creating, advertising, or otherwise promoting the Plaintiff's Copyrights. Plaintiff's average monthly investment in Plaintiff's Copyrights and respective product is about $1,250.00.

12. Through extensive advertising, Plaintiff amassed over 5,000 followers on Instagram.

13. Plaintiff's target customer group includes any and all people who golf, enjoy cigars, drink, and/or enjoy the outdoors.

14. Plaintiff's main sales channels of products utilizing Plaintiff's Copyrights include Amazon US – through one authorized seller, Plaintiff's TikTok, and Plaintiff's own online URL, providing global customers with a convenient purchasing experience. Plaintiff's Copyrights are displayed in Plaintiff's online product listings and embodied in the products themselves through product packaging. Plaintiff's Copyrights are prominently displayed.

15. Plaintiff invests substantial resources in Plaintiff's Copyrights and corresponding brand development, enhancing brand and product influence through marketing and advertising. Plaintiff also continually optimizes product pages and customer service to further improve customer satisfaction and loyalty.

Docusign Envelope ID: 09796F21-EFF9-4317-BD9F-828202330A74

16.  Plaintiff has not entered into a contract with or otherwise authorized Defendants to use Plaintiff's Copyrights.

17. Defendants' infringing use of Plaintiff's Copyrights has resulted in significant, direct financial loss.

18. The sales of products under Plaintiff's Copyrights are significant and the public recognizes Plaintiff's Copyrights.

19. After Defendants entered the online marketplace – along with other infringers, utilizing infringing and/or derivative copies of Plaintiff's Copyrights, Plaintiff has lost an estimated $73,734.83 in profit, being about $884,817.96 per year in lost profits.

20. Defendants' infringing use has also resulted in significant irreparable harm.

21. Defendants' unauthorized use of the Plaintiff's Copyrights damages the reputation of Plaintiff and Plaintiff's Copyrights, as the infringing products negatively impact customers' perceptions of our copyrights, brand, and products.

22. We have expended substantial time, money, and other resources in producing, advertising, and otherwise promoting Plaintiff's Copyrights and the products sold under Plaintiff's Copyrights. As a result of Defendants' infringing activities, we have not been able to fully realize our return on investment.

23. Plaintiff's Copyrights have become widely known from their unique elements and features, and as such, Plaintiff's Copyrights – and the products embodied in the Plaintiff's Copyrights - have become recognized by consumers as high quality products sourced from Plaintiff.  Over time, Plaintiff's Copyrights and the products embodied in the Plaintiff's Copyrights became popular, resulting in Defendants' copying the Plaintiff's Copyrights.

Docusign Envelope ID: 09796F21-EFF9-4317-BD9F-828202330A74

24. Defendants are direct competitors with us, selling the same or similar products through the same or similar channels. As a result, we have and continue to lose market share to a direct competitor as a result of their infringement. This harm is irreparable and it remains unknown how much money and time is needed to reestablish the Plaintiff's Copyrights' reputation and goodwill – as well marketplace visibility and rankings.

25. This infringing behavior by Defendants severely impacts our copyright rights and undermines the fair competition environment in the market.

26. Monetary damages cannot adequately compensate us for ongoing infringement because monetary damages fail to address the damage to our control over Plaintiff's Copyrights, the reputation of Plaintiff, its' brand, its' products, and Plaintiff's Copyrights, the associated goodwill of Plaintiff's Copyrights, and the ability to exploit the protected works. Further, Plaintiff's ability to realize a return on our investment is significantly diminished, if not completely destroyed.

27. Plaintiff is further irreparably harmed by the unauthorized making, using, offering for sale, selling, or importing of goods that utilize infringing copies of Plaintiff's Copyrights because infringers take away our ability to control the nature and quality of the Infringing Products. This results in a loss of quality control over goods made, used, offered for sale, sold, or imported utilizing Plaintiff's Copyrights, and in turn, causes loss of control over our and Plaintiff's Copyrights' reputation – both of which are neither calculable nor precisely compensable.

28. Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on the 5th day of January, 2026, in Plant City, FL.

Respectfully submitted,

Signed by:

F8942442D1944A5...

BRUCE ADAM GILLEY