IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **GIMME GOLF TOOL LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,**<br><br>Defendants. | Civil Action No.: 25-cv-15743<br><br>Honorable Judge Mary M. Rowland<br><br>Magistrate Judge Beth W. Jantz |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT**

Plaintiff, Gimme Golf Tool LLC ("Plaintiff"), submits the following memorandum in support of its Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55, against the Individuals, Partnerships, and Unincorporated Associations as delineated on Schedule A to Plaintiff's Amended Complaint ("Defendants"), who have failed to respond or otherwise plead or have not been dismissed ("Defaulting Defendants") based on Plaintiff's action for copyright infringement pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 101 et seq.

I.  INTRODUCTION

Plaintiff respectfully requests this Court to enter default and grant a default judgment against the Defaulting Defendants pursuant to Fed. R. Civ. P. 55, awarding relief to Plaintiff. Defendants were properly served as per this Court's Order authorizing service by alternative means on January 26, 2026. *See* Dkt. No. 33. Despite this, the Defaulting Defendants failed to file an

1

answer to Plaintiff's Amended Complaint, and this Court should enter default and grant a default judgment.

## II. STATEMENT OF FACTS

1. Plaintiff is a United States Limited Liability Company. Plaintiff created and is known for their unique golf accessory – the "Gimme Golf Tool." Plaintiff spent much time and money in design, testing, and general R&D, from which the Plaintiff's Gimme Golf Tool was formed. *See* Plaintiff's Amended Complaint at ¶ ¶ 4-5, 12.

2. Plaintiff is the owner of United States Copyright Reg. Nos. VA 2-450-964 and VA 2-450-965 (hereinafter "Plaintiff's Copyrights" or "Copyrights-in-Suit"). Plaintiff's Copyrights include a 2D work and photographs. *See Id*. at ¶ ¶ 14-15.

3. Plaintiff spent significant time and resources on advertising or otherwise promoting the Plaintiff's Copyrights. Plaintiff's average monthly investment in Plaintiff's Copyrights and respective product is about $1,250.00. *See Id*. at ¶ 16.

4. Plaintiff's main sales channels of products, promoted and shown through Plaintiff's Copyrights, include Amazon US – through one authorized seller, Plaintiff's TikTok, and Plaintiff's own online URL, providing global customers with a convenient purchasing experience. Plaintiff's Copyrights are displayed in Plaintiff's online product listings and embodied in the products themselves through product packaging. Plaintiff's Copyrights are prominently displayed. *See Id*. at ¶ 19.

5. Plaintiff has expended substantial time, money, and other resources in producing, advertising, and otherwise promoting Plaintiff's Copyrights. Over time, Plaintiff has invested heavily in the Plaintiff's Copyrights and respective product. *See Id*. at ¶ 21.

6. The sales of products under Plaintiff's Copyrights are significant, reflecting strong market recognition, stable brand development, and public recognition of Plaintiff's Copyrights. *See Id*. at ¶ 24.

7. The influx of and wide-spread use of infringing and derivative copies of Plaintiff's Copyrights on the exact same products led to a sharp drop in revenue. After Defendants entered the online marketplace – along with other infringers - utilizing infringing and/or derivative copies of Plaintiff's Copyrights, Plaintiff has lost an estimated $73,734.83 in profit, being about $884,817.96 per year in lost profits. *See* Plaintiff's Amended Complaint at ¶¶ 26-27.

8. This infringing behavior by Defendants severely impacts Plaintiff's Copyrights rights and undermines the fair competition environment in the market. The sales of Plaintiff's products through the Copyrights-in-Suit have dropped significantly, and Plaintiff's market share has been illegally eroded. The infringing behavior of these aliases has diminished Plaintiff's Copyrights rights and resulted in loss of exclusivity and control of creative content. Plaintiff has not been able to fully realize the return of investment in the Copyrights-in-Suit. Plaintiff has lost control over the rights in the Plaintiff's Copyrights, lost Plaintiff's and Plaintiff's products reputation, associated goodwill of Plaintiff's Copyrights, and ability to exploit the protected works. Plaintiff has also lost profit, market share, and sales volume. *See Id*. at ¶¶ 28-30.

9. Plaintiff has not entered a contract with or licensing agreement with Defendants for the Copyrights-in-Suit. Defendants are not authorized sellers of products bearing or otherwise using Plaintiff's Copyrights. *See Id*. at ¶ 31.

10. Defendants are partnerships, individuals, and/or unincorporated associations operating as fictitious seller aliases on online platforms who target sales to Illinois residents by setting up and operating interactive "storefronts" under aliases via online retail website(s). Despite appearing from a foreign nation, Defendants affirmatively target Illinois consumers by advertising,

offering to sell, and standing ready, willing and able to sell and ship, and upon information and belief and based on numerous, randomized test purchases, have sold and shipped, Infringing Products to the United States, including Illinois, under or otherwise using infringing and/or derivative copies of Plaintiff's Copyrights. Defendants reside and operate in the People's Republic of China or other foreign jurisdiction. A search of Defendants' fictitious addresses (if any) via Google does not return the same fictitious seller alias names nor purported business names, respectively. *See* Plaintiff's Amended Complaint at ¶ ¶ 32-35.

11. Defendants sell, offer for sale, distribute, and/or advertise goods utilizing infringing and/or derivative versions of Plaintiff's Copyrights. Defendants use infringing and/or derivative copies of Plaintiff's Copyrights on at least their respective product pages, seller pages, advertisements, and/or product packaging. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies as Plaintiff. Defendants have bank accounts outside this Court's reach and move money there regularly to avoid paying any monetary judgment. *See Id*. at ¶ ¶ 45-46, 48, 50.

12. Defendants' use of the Plaintiff's Copyrights in connection with the advertising, distribution, offering for sale, and/or sale of Infringing Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff. Defendants' infringing and/or derivative use of Plaintiff's Copyrights has caused significant financial loss to Plaintiff. *See Id*. at ¶ ¶ 64-65.

13. Plaintiff is the true and correct owner of Plaintiff's Copyrights. Plaintiff has complied in all respects with the Copyright Act of the United States and other laws governing copyright and secured the exclusive rights and privileges in and to Plaintiff's Copyrights. Plaintiff's Copyrights are original works. Under 17 U.S.C. § 106, Plaintiff has the exclusive rights

and privileges to reproduce, prepare derivative works, distribute copies, and import copies into the United States, of the Plaintiff's Copyrights. *See Id*. at ¶ ¶ 77-80.

14. Defendants infringed Plaintiff's exclusive copyrights by creating infringing and/or derivative works, copying, displaying, reproducing, advertising, and/or distributing works to the public based upon Plaintiff's Copyrights in violation of 17 U.S.C. § 106. Defendants' Infringing Products, Infringing Product listing pages, and/or Infringing Product packaging, incorporate and copy Plaintiff's Copyrights. Defendants' copying constitutes improper appropriation of Plaintiff's Copyrights. Defendants' Infringing Products, Infringing Product listing pages, and/or Infringing Product packaging are unlawful copies and/or derivatives of Plaintiff's Copyrights. Defendants had access to Plaintiff's Copyrights. Defendants have been and will likely continue actively infringing the Copyrights-in-Suit in the State of Illinois, in this judicial district, and other jurisdictions in the United States by displaying, advertising, reproducing, selling, and/or offering to sell products utilizing derivative and/or infringing copies of the Copyrights-in-Suit. *See* Plaintiff's Amended Complaint at ¶ ¶ 81-86.

15. Based on use of aliases and virtually identical infringement, Defendants' conduct constitutes willful and direct copyright infringement. The virtually identical nature between Plaintiff's Copyrights and Infringing Products and/or images used in advertising or displaying or packaging the products sold by Defendants further evidences the willful and direct infringement by Defendants. Based on the virtually identical infringement, Defendants had actual or constructive knowledge of Plaintiff and/or Plaintiff's Copyrights before and during Defendants' advertising, offering for sale, and/or sale of Infringing Products. Defendants' conduct as alleged herein was willful, reckless, and/or with knowledge. *See Id*. at ¶ ¶ 87, 90-91.

16. The harm caused to Plaintiff is irreparable. *Id.* at ¶ 89.

17. On January 5, 2026, Plaintiff filed its Amended Complaint. *See* Dkt. No. 9.

18. On January 8, 2026 and January 12, 2026, respectively, this Court entered an Order for alternative service and Sealed Temporary Restraining Order. *See* Dkt. Nos. 23, 27.

19. On January 26, 2026, Plaintiff properly served Defendants and moved for a Preliminary Injunction Order. *See* Dkt. Nos. 33-35.

20. On February 24, 2026, this Court entered a Preliminary Injunction Order. *See* Dkt. No. 54.

21. Defaulting Defendants have failed to file an answer or other motion within the time allotted by Fed. R. Civ. P. 12.

22. Defaulting Defendants are not believed to be minors or incompetent persons.

23. Defaulting Defendants are not believed to be in the U.S. military.

### III. JURISDICTION AND VENUE

This Court has original subject matter jurisdiction over the claims in this action, Defendants are subject to personal jurisdiction in this District, and venue is proper in this District. *See* Plaintiff's Amended Complaint at ¶ ¶ 67-75.

### IV. ARGUMENT

"Default judgment requires two steps: (1) the establishment, or entry, of the default; and (2) the actual entry of a default judgment." *Celine SA. v. P'ships & Unincorporated Ass'ns Identified in Schedule A*, No. 25 CV 008829, 2025 LX 380872, at *6 (N.D. Ill. Sep. 8, 2025); *See also* Fed. R. Civ. P. 55(a)-(b).

#### a. Defaulting Defendants have defaulted.

Federal Rule of Civil Procedure 55(a) governs the entry of default. Rule 55 states that "when a party against whom a judgment for affirmative relief is sought has failed to plead or

6

otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

Defaulting Defendants' answers or responses under Fed. R. Civ. P. 12 were due no later than February 17, 2026. This deadline has passed, and Defaulting Defendants have failed to file answers or otherwise respond. *See also* Decl. Ge (Linda) Lei at ¶ 1(a), attached hereto as **Exhibit A**. As such, Plaintiff respectfully submits Defaulting Defendants are in default and requests this Court to enter default.

b. **Default Judgment is proper.**

"Upon entry of default, 'the well-pleaded allegations of a complaint relating to liability are taken as true.'" *Myles v. Reighter*, 2018 U.S. Dist. LEXIS 53402, 2018 WL 1542391, at *2 (N.D. Ill. Mar. 28, 2018) (citations omitted). As detailed above, no responsive pleadings have been filed in this matter making default judgment appropriate. The allegations of the Amended Complaint are, therefore, taken as true.

The Amended Complaint alleges sufficient facts to establish the necessary elements of a claim under the Federal Copyright Act, 17 U.S.C. § 101 et seq. Here, Plaintiff's factual allegations in the Amended Complaint establish that Defaulting Defendants are liable to Plaintiff on each cause of action contained in the Amended Complaint. The Amended Complaint alleges that Defaulting Defendants have committed acts of copyright infringement and vicarious and/or contributory copyright infringement. The Amended Complaint alleges that Plaintiff is the owner of Plaintiff's Copyrights, which were duly and legally issued by the United States Copyright Office. The Amended Complaint also shows that Defaulting Defendants have engaged in acts of infringement by reproducing, offering for sale, and/or selling products utilizing infringing and/or

7

derivative versions of Plaintiff's Copyrights. *See* Plaintiff's Amended Complaint at ¶ ¶ 46, 81-86. As such, the allegations contained in the Amended Complaint, which must be taken as true due to Defaulting Defendants' default under Fed. R. Civ. P. 55, are more than sufficient to establish that the Defaulting Defendants are liable as a matter of law for each cause of action alleged in the Amended Complaint.

### c. A Permanent Injunction is proper.

Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Plaintiff's registered copyrights rights. Plaintiff is also entitled to injunctive relief so it can quickly take action against any e-commerce store selling products utilizing infringing and/or derivative copies of Plaintiff's Copyrights that are found to be linked to Defaulting Defendants.

"A plaintiff seeking a permanent injunction must show that: (1) it has suffered an irreparable injury; (2) legal remedies, such as monetary damages, cannot adequately compensate for that injury; (3) the balance of hardships between the parties warrants an equitable remedy; and (4) a permanent injunction would not harm the public interest." *Entm't One UK Ltd. v. 2012shiliang*, 384 F. Supp. 3d 941, 955 (N.D. Ill. 2019) (citations omitted).

Plaintiff has previously established such factors, as evidenced by this Court's entry of a Temporary Restraining Order and Preliminary Injunction Order.

Nevertheless, Defaulting Defendants' unauthorized use of Plaintiff's Copyrights has and will likely continue to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's and Plaintiff's Copyrights reputation, loss of goodwill, loss of exclusivity, inability to realize a return on investment, loss of market share, and loss of future sales.

8

Without the entry of a permanent injunction, Defaulting Defendants will likely continue to offer Infringing Products. Indeed, Defaulting Defendants will likely continue to offer Infringing Products of questionable value to Plaintiff's customers, continuing to cause Plaintiff to lose control of its copyrights and creative content – and causing confusion in the public marketplace. Plaintiff has already expended substantial time and money in advertising Plaintiff's Copyrights and products thereof, and Plaintiff has lost significant goodwill, reputation, market share, and sales due to Defaulting Defendants' infringing activity. Here, Defaulting Defendants will likely continue to illegally erode the proper marketplace in which Plaintiff's Copyrights and products thereof operate through direct competition on virtually identical goods, utilizing virtually identical copies of Plaintiff's Copyrights, in the same channels of trade. *See e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("'Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm'") (quoting *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012))); *Life Spine, Inc.*, 8 F.4th at 546 (citing 11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2948.1 (3d ed. 2002 & April 2021 Supp. ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable.")); *Abbott Lab'ys.*, 544 F.3d at 1362 (noting likelihood of loss of market position is evidence of irreparable harm). Similarly, Defaulting Defendants' flooding of the marketplace with Infringing Products deters any reputable third party license. As such, Plaintiff is and will face irreparable harm, and legal remedies cannot compensate Plaintiff for such injuries.

Next, courts have firmly found "'no harm to Defendants to being enjoined from violating the law,' and eliminating potential consumer confusion serves the public interest." *Entm't One UK*

*Ltd.*, 384 F. Supp. 3d at 955 (citations omitted). *See also Advanced Communication Design, Inc. v. Premier Retail Networks, Inc.*, 46 Fed. Appx. 964, 984-85 (Fed. Cir. 2002) (balance of harms favored preliminary injunctive relief in action for infringement of patent for apparatus that allowed multiple customers at music or video stores to simultaneously sample an audio or visual product at the store, despite claim that injunction would effectively put alleged infringer out of business; patentee had lost business, goodwill, and sales opportunities, and it was possible that alleged infringer had already benefitted at patentee's expense); *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("[T]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought the injury upon itself") (citations omitted).

As a result, this Court should grant injunctive relief to prevent further infringement by Defaulting Defendants and further irreparable harm to Plaintiff.

### d. Plaintiff is entitled to statutory damages.

Plaintiff seeks an award of $30,000.00. Pursuant to the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c), a plaintiff in a case involving the use of a copyright infringement may elect to receive "a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Further, if the infringement "was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

"When determining an award of statutory damages, the court is not required to follow any rigid formula." *Bartels v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*, No. 23 C 3755, 2024 U.S. Dist. LEXIS 57029, at *9 (N.D. Ill. Mar. 29, 2024). Thus, this Court, in its discretion, may consider factors such as "the difficulty or impossibility of proving actual damages,

the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringements." *Id*.; *See Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991).

The actual damages suffered by Plaintiff is very difficult to prove. The scope and timeline of Defaulting Defendants' infringing activities are largely unknown, including the timeline of sales of Infringing Products and other ASINs or product IDs used for such activity. Further, it is unclear if Defaulting Defendants have utilized other trade routes or sellers pages for its Infringing Products, whether on different platforms or under different aliases. As a result, calculating lost licensing fees for actual profits is difficult. Further, Plaintiff's loss of market value and goodwill is significant; however, it is difficult to calculate. Because Defaulting Defendants' Infringing Products were virtually identical to goods offered by Plaintiff, and utilized virtually identical, infringing copies of Plaintiff's Copyrights - and sold through the same channels of trade as Plaintiff - consumers now have confusion and/or low expectation of Plaintiff's quality and products and the goodwill of Plaintiff's Copyrights is forever tarnished. Also, such illicit actions cause significant loss of market share and loss of creative expression. Moreover, the flooding of the market with Infringing Products by Defaulting Defendants deterred any potential, reputable licensing fee with third parties. Finally, the extensive money and time spent in advertising by Plaintiff was wasted, in part, because Plaintiff did not realize a full return on investment due to Defaulting Defendants' stores. As such, significant difficulty exists for establishing an accurate actual damage award.

Next, the circumstances of infringement lean in favor of Plaintiff. Clearly, Defaulting Defendants did not engage in any negotiations for licensing of Plaintiff's Copyrights nor perform due diligence before their infringing activities. Rather, due to the popularity of Plaintiff's Copyrights and the products sold thereunder, Defaulting Defendants proceeded to sell nearly identical Infringing Products using identical copies of Plaintiff's Copyrights. The Defaulting

11

Defendants are made-up, seller aliases with no reliable, identifiable individual or entity. Defaulting Defendants prefer and are designed to remain anonymous due to their knowledge of wrongdoing. Moreover, Defaulting Defendants have not even appeared in this Court to attempt to justify their infringing activities.

Further, statutory damages will act as a proper deterrent to future copyright infringements. With actual damages alone, Defaulting Defendants are aware of their ability to create multiple-seller aliases, sell infringing products, and only risk the chance of being caught by Plaintiff. With statutory damages, Defaulting Defendants and other third parties will be properly deterred from engaging in infringing activities. Here, as discussed in much detail previously, Defaulting Defendants' products are virtually identical and Defaulting Defendants utilize virtually identical copies of Plaintiff's Copyrights, where Defaulting Defendants did not even try to independently create their own works. As such, statutory damages are necessary to prevent future 'quick and easy' infringement networks. *See Bartels*, No. 23 C 3755 at *11 ("Statutory damages serve as a deterrent to the design team's laissez-faire approach to 'finding inspiration'").

For willfulness, "a finding of willfulness is justified if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." *Wildlife Express Corp. v. Carol Wright Sales, Inc*., 18 F.3d 502, 511 (7th Cir. 1994); s*ee also Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989) ("Willful blindness is knowledge enough"). "This can be shown through evidence that the defendant 'should have known of the direct infringement.'" *Bartels*, No. 23 C 3755 at *11 (citations omitted).

As mentioned above, Plaintiff has been selling its products and utilizing Plaintiff's Copyrights for a decent duration. Without any independent search or creation, Defaulting Defendants simply began selling products utilizing virtually identical copies of Plaintiff's Copyrights. Defaulting Defendants never conducted due diligence nor contacted Plaintiff

12

regarding licensing opportunities. Based on the longevity of publication and the virtually identical copying, Defaulting Defendants acted with knowledge of Plaintiff's Copyrights or at least in a reckless disregard of Plaintiff's Copyrights. Further, Defaulting Defendants "should have known of direct infringement" when they copied – virtually identically – Plaintiff's Copyrights. *See Dish Network L.L.C. v. Maulik Shah*, No. 24 CV 4745, 2025 LX 411818, at *6 (N.D. Ill. Apr. 17, 2025) ("…the defendants' business model is based entirely on copyright infringement, and the Court thus concludes that the infringement was willful.") Even if Defaulting Defendants had no actual knowledge of Plaintiff's Copyrights, Defaulting Defendants "should have known" copying a creative work – virtually identically – is direct infringement.

Based on the foregoing, Plaintiff requests statutory damages for willful copyright infringement of Plaintiff's Copyrights in the amount of $30,000.00. This request is reasonable based on the willful nature, including the virtually identical nature of Defaulting Defendants' copying, the intentionally anonymous nature of Defaulting Defendants, the longevity of publication of Plaintiff's Copyrights, and the effectiveness it will have on deterring Defaulting Defendants and others from infringing Plaintiff's rights.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter default and grant a default judgment against the Defaulting Defendants and enter Plaintiff's proposed default judgment order.

DATED February 26, 2026  Respectfully submitted,

/s/ Ge (Linda) Lei
Ge (Linda) Lei
Getech Law LLC
203 N. LaSalle St., Suite 2100,
Chicago, IL 60601

                                                Attorney No. 6313341
Linda.lei@getechlaw.com
312-888-6633

*ATTORNEY FOR PLAINTIFF*